IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELE NOWLIN,

       Plaintiff,

      v.

CAROLYN COLVIN, acting
Commissioner of Social Security,

       Defendant.

Case No. 3:14-cv-1025-SB

**OPINION AND ORDER**

**BECKERMAN, Magistrate Judge**.

    Michele Nowlin challenges the Commissioner's decision denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). This Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is affirmed.

1 - OPINION AND ORDER

## I. BACKGROUND

*A.    Procedural History[1]*

On June 9, 2010, Nowlin protectively filed an application for SSI, alleging disability since

October 1, 1998, due to musculoskeletal impairments, asthma, mood disorder, anxiety, posttraumatic

stress disorder, and personality disorder. After her application was denied initially and upon

reconsideration, Nowlin filed a written request for a hearing before an administrative law judge

("ALJ"). On December 19, 2012, Nowlin, represented by counsel, appeared and testified before an

ALJ.

On January 10, 2013, the ALJ issued a decision finding Nowlin not disabled, as defined by

the Act. Nowlin filed a request for review of the ALJ's decision. On June 4, 2014, the Appeals

Council denied Nowlin's request for review of the ALJ's decision, making it the final decision of

the Commissioner. 20 C.F.R. §§ 404.981, 422.210. Nowlin then filed her Complaint for review by

this Court.

*B.    Factual History*

The parties do not dispute the relevant facts. Nowlin was 40 years old on the date her

application was filed. She has at least a high school education, but she has no past relevant work

history. (Pl.'s Brief 3.)

*C.    The ALJ's Decision*

In denying Nowlin's application, the ALJ applied the five-step disability evaluation process

set forth in 20 C.F.R. § 404.1520. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir.1995)

---

[1] Nowlin made two prior claims for Disability Insurance Benefits. (Tr. 185.) Those claims
were denied on July 24, 2006, and July 5, 2007, respectively, and are not at issue in this case.

2 - OPINION AND ORDER

(describing the five-step process). At step one, the ALJ found Nowlin had not engaged in substantial gainful activity since June 9, 2010, the date she filed her SSI application. At step two, the ALJ determined Nowlin suffered from a number of severe impairments, including "reconstructive surgery of the knees, chronic back and neck pain, asthma complicated by smoking, mood disorder, anxiety, posttraumatic stress disorder, and personality disorder." (Tr. 18.)[2] Notwithstanding a finding of severe impairments, the ALJ concluded Nowlin was not automatically presumed disabled at step three, because her condition did not meet or equal any of the listed impairments. 20 C.F.R., Pt. 4, Subpt. P, App. 1. Consequently, the ALJ's non-disability decision turns on his assessment of Nowlin's residual functional capacity ("RFC"), and application of this RFC assessment at steps four and five. *See* 20 C.F.R. § 404.1520(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

In assessing Nowlin's RFC, the ALJ found she retained the capacity to

> perform light work as defined in 20 CFR 416.967(b) except she cannot climb ladders, ropes or scaffolds or work at unprotected heights. She can occasionally climb ramps and stairs, stoop, crouch, and crawl. She should avoid concentrated exposure to noxious fumes and odors. She is limited to simple, entry-level work. She is capable of occasional interaction with the public but no transactional interaction. She is capable of occasional interaction with coworkers.

(Tr. 19.) Although the ALJ recognized Nowlin testified to additional limitations that would establish a significantly lower RFC, he rejected her subjective testimony as "not entirely credible." (Tr. 20.) Nowlin does not challenge this adverse credibility finding. Specifically, the ALJ found that Nowlin's

---

[2] "Tr." refers to the official transcript of the administrative record. (ECF No. 11.)

allegations of debilitating symptoms were not supported by the treatment record, and her credibility was undermined by evidence of drug-seeking behavior. (Tr. 20.)

On the basis of this RFC assessment and the testimony of a vocational expert ("VE"), at step four the ALJ found that a transfer of job skills was not an issue because Nowlin had no past relevant work. Consequently, the ALJ proceeded to step five, where he determined Nowlin was not disabled because she retained the capacity to perform other work that existed in sufficient numbers in the national economy. In making this determination, the ALJ posed a hypothetical question to the VE based upon Nowlin's RFC. In response, the VE testified that a person with the RFC assigned by the ALJ could perform occupations such as a small product assembler and janitor. (Tr. 24.)

## II. STANDARD OF REVIEW

A district court reviews the Commissioner's decision to ensure the Commissioner applied proper legal standards and the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court may not substitute its judgment for that of the Commissioner, *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006), or "give vent to feelings of compassion." *Winans v. Bowen*, 853 F.2d 643, 655 (9th Cir. 1987).

4 - OPINION AND ORDER

## III. DISCUSSION

Nowlin contends this case should be remanded because the ALJ improperly rejected the opinions of examining psychologist Ninfa J. Neuser, Psy.D., treating psychiatric mental health nurse practitioner Susan Marie, PMHNP, Ph.D., and examining agency physician Dr. Yin Kan Hwee, M.D. (Pl.'s Brief 2.)

To establish a physical or mental impairment, a claimant must provide evidence from medical sources. The Code of Federal Regulations ("Code") defines "acceptable medical sources" as: licensed physicians, optometrists, and podiatrists; licensed or certified psychologists; and qualified speech language pathologists. 20 C.F.R. § 404.1513(a). Further, a distinction is made among the opinions of three types of physicians: (1) those who treat the claimant ("treating physician"), (2) those who examine but do not treat the claimant ("examining physician"), and (3) those who neither examine nor treat claimant, but review claimant's medical records ("non-examining physician"). 20 C.F.R. § 404.1527(d); *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). Regardless of the classification of a particular medical provider, the ALJ is never relieved of his obligation to consider evidence submitted by each source and provide some reason for rejecting that evidence. *See* 20 C.F.R. § 404.1527(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

Generally, more weight is ascribed to the opinion of a treating source than to the opinions of physicians who do not treat the claimant. *Holohan*, 246 F.3d at 1201-02; *Lester*, 81 F.3d at 830. The ALJ may not reject the uncontroverted opinion or ultimate conclusions of a treating physician (or examining physician) without providing "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. "The ALJ can meet this burden by setting out a

5 - OPINION AND ORDER

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes,* 881 F.2d at 750 (quotations and citation omitted).

If, however, a treating physician's opinion is contradicted by another acceptable medical source, an ALJ may reject the treating doctor's opinion by providing specific and legitimate reasons that are supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2004). This is so because, even when contradicted, a treating physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

Below, the Court considers Nowlin's challenges to the ALJ's consideration of three medical sources - an examining psychologist, a treating nurse, and an examining physician.

## A.    *Opinions of Examining Psychologist and Treating Nurse*

Nowlin argues the ALJ erred when he rejected Dr. Neuser's opinion in favor of the opinions of two other examining psychologists, Steven Barry, Ph.D. and Donna Wicher, Ph.D., and the opinion of Dr. Margaret Moore, a non-examining clinical psychologist who testified by telephone at the ALJ hearing.

Dr. Neuser examined Nowlin on May 3, 2012. Nowlin was referred to Dr. Neuser by Central City Concern for examination of her functioning as it related to her ability to maintain employment.

6 - OPINION AND ORDER

(Tr. 517.) Following the examination, Dr. Neuser completed a "Mental Residual Functional Capacity Assessment" ("MRFCA"), and indicated Nowlin was severely limited in her abilities to: (1) complete a regular workweek without interruptions from psychological symptoms, (2) stay on task for a two-hour period, (3) accept instruction from supervisors, (4) interact with the public, and (5) maintain socially appropriate behavior with peers at work. (Tr. 514-516.) Further, Dr. Neuser stated Nowlin experienced frequent and unpredictable panic attacks. (Tr.515.) In addition to the MRFCA, Dr. Neuser completed an extensive "Psychodiagnostic Evaluation." (Tr. 517-524.) In that report, among other diagnoses, Dr. Neuser assigned Nowlin a Global Assessment of Function ("GAF") score of 45 (serious impairment), and panic disorder, with agoraphobia.[3] (Tr. 522.) Dr. Neuser opined that the severity of Nowlin's conditions existed since 2004. (Tr. 516.) Nowlin's treating nurse practitioner, Dr. Marie, concurred with Dr. Neuser's opinions.[4] (Tr. 554, 557.)

Dr. Barry examined Nowlin approximately one year earlier, in March 2011. Nowlin was referred to Dr. Barry by Central City Concern for evaluation as part of her disability application. (Tr. 408.) In Dr. Barry's opinion, Nowlin's psychological conditions did not render her unable to work. (Tr. 415 ("I view her different psychological problems to cause some impairments in her life, I don't view these as barriers to employment.").) Dr. Barry supported this conclusion with Nowlin's daily activities – attending all of her son's school programs, walking him to school each day, taking him

---

[3] Agoraphobia refers to "[a] mental disorder characterized by an irrational fear of leaving the familiar setting of home, or venturing into the open, so pervasive that a large number of external life situations are entered into reluctantly or avoided; often associated with panic attacks." Stedman's Medical Dictionary, at 37 (27th ed. 2000).

[4] A nurse practitioner qualifies as an "other source" who can provide evidence concerning the severity of a claimant's impairments and how it affects claimant's ability to work. 20 C.F.R. § 404.1513(d); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

7 - OPINION AND ORDER

on outings. (Tr. 414.) In addition, Dr. Barry noted Nowlin attends her medical appointments, and accepts invitations for coffee with neighbors. (Tr. 414.) Finally, Dr. Barry considered the work Nowlin performed at home. (Tr. 415.) In contrast to Dr. Nowlin's assessment, Dr. Barry assigned Nowlin a GAF of 53 to 55 (moderate impairment).

About six months before Dr. Barry's assessment, Nowlin was referred to Dr. Wicher by the Oregon Department of Human Services for a Comprehensive Psychodiagnostic Evaluation to determine whether Nowlin had "any mental, cognitive or emotional difficulties which would interfere with her ability to sustain full-time, gainful employment." (Tr. 366.) According to Dr. Wicher, Nowlin described "only mild deficits in her ability to perform activities of daily living, based primarily on her lack of a regular routine." (Tr. 369.) Next, Dr. Wicher determined Nowlin had mild to moderate deficits in social functioning based upon a history of dysfunctional interpersonal relationships. (Tr. 369.) While Nowlin complained of problems with concentration, Dr. Wicher noted there were no gross concentration difficulties evident during mental status testing. (Tr. 369.) Nowlin's persistence during the evaluation was adequate and she attempted and pursued all tasks presented by the examiner. (Tr. 369-70.) Nowlin described problems with persistence in day-to-day life, *i.e.*, an inconsistent work history and a need to take breaks throughout the day. Nowlin, however, reported this was due to her physical, rather than psychological, problems. (Tr. 370.) Nowlin did not report a history of recent, lengthy episodes of psychological decompensation. (Tr. 370.)

Margaret R. Moore, Ph.D, testified at Nowlin's ALJ hearing. Dr. Moore provided testimony regarding the medical evidence in the record relevant to Nowlin's alleged mental impairments. (Tr. 36.) Based upon her review of the record, Dr. Moore viewed Nowlin as experiencing only minimal

8 - OPINION AND ORDER

limitations in her activities of daily living. (Tr. 42.) Dr. Moore determined that Nowlin's most significant impairment was in the area of social functioning. Accordingly, Dr. Moore rated Nowlin as having moderate limitations in that domain. (Tr. 42.) In the third domain, concentration, persistence and pace, Dr. Moore "saw no evidence of cognitive compromise that would influence her ability to deal with complex issues." (Tr. 43.) However, due to Nowlin's "reluctance to engage," Dr. Moore assigned a mild to moderate rating. In the last domain, episodes of extended decompensation, Dr. Moore reported there were no qualifying episodes. (Tr. 43.)

As set forth above, there is conflicting medical evidence regarding Nowlin's mental impairments. Specifically, Drs. Barry's, Wicher's and Moore's opinions on whether Nowlin's impairments meet the paragraph B criteria contradict those of Dr. Neuser.[5] Consequently, the ALJ may reject Dr. Neuser's (and Dr. Marie's) opinion by providing specific and legitimate reasons that are supported by substantial evidence. *Ryan*, 528 F.3d at 1198.

Based upon a single psychological examination of Nowlin, Dr. Neuser concluded Nowlin had moderately severe and severe mental limitations, including significant impairment in the area of memory and concentration. Dr. Marie concurred without further analysis. The ALJ gave Dr. Neuser's opinion little weight for several reasons. The ALJ found the assessment inconsistent with the treatment record, the evaluation of other sources, and Nowlin's daily activities. Relying on the testimony of Dr. Moore, the ALJ found no formal assessment to support Dr. Neuser's conclusion

---

[5] Paragraph B criteria requires that the mental impairment(s) must result in at least two of the following: marked restriction of daily activities; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. pt 404, subpt. P, app 1, § 1200, *et seq*.

that Nowlin had moderately severe and severe memory problems. At the hearing before the ALJ, and

in relation to Dr. Neuser's assessment, Dr. Moore stated:

> I consider this evaluation . . . to be an outlier in terms of the kinds of statements made
> and the conclusions drawn. . . . As far as I could see there were no formal
> assessments that would substantiate . . . those claims about problems with memory.
> . . . She had a normal mental status exam even for this evaluation. It's one of those
> particular situations where I think this set of conclusions really is at odds with the
> totality of the record and certainly the other two evaluators who saw this claimant.

(Tr. 44-45.) At the hearing, Nowlin's counsel did not challenge these statements.

In addition, Dr. Neuser's diagnosis of agoraphobia was unsupported by the record, including

Nowlin's own testimony that she was out and about in the community, managed her transportation,

and took her children to school. (Tr. 23, 45; *see, e.g.*, Tr. 51 (attended parent-teacher conferences,

took the bus to appointments), 369 (shopped for groceries, visited with her neighbors, and took

public transportation), 385 (agreeable to participate in group therapy), 409 (would take her son

bowling or to movies), 411 (shopped, kept doctor appointments, socialized with neighbors

occasionally, walked her son to school every day, and was "very involved" with her son's school).)

Finally, Dr. Neuser concluded Nowlin's conditions existed at the assessed level of severity since

2004, despite her review of records dating back only to 2010. (Tr. 516-517.)

Rather than rely upon Dr. Neuser's assessment, the ALJ found the assessments of Dr. Wicher

and Dr. Barry more consistent with Nowlin's daily activities and performance on mental status

examinations. (Tr. 23.) Drs. Wicher and Barry examined Nowlin and found she had only mild to

moderate mental deficits that did not prevent her from working. (Tr. 369-70, 414-15.) The ALJ

afforded those opinions "significant weight," and concluded Nowlin's claims of debilitating

symptoms were not supported by the medical evidence of record and her daily activities. (Tr. 21-22.)

In his written decision, the ALJ detailed evidence in the record in support of his finding that Nowlin's daily activities belied her allegations of debilitating mental symptoms. (Tr. 23 (activities listed therein).)

Nowlin argues that her treating providers were in a better position to evaluate her than one-time examiners. (Pl.'s Brief 5.) Dr. Neuser, however, was a one-time examiner, not a treating provider, and Dr. Marie concurred with Dr. Neuser's opinion, but provided no analysis or test results to support her conclusion.

The ALJ discounted Dr. Neuser's opinion because it was contrary to Nowlin's own statements about what she could do, and was inconsistent with the opinions of three other doctors, two of whom had the same level of involvement, *i.e.*, a one-time examiner, with Nowlin. The third medical source, Dr. Moore, testified at Nowlin's hearing and Nowlin's counsel did not challenge her conclusions. Before this Court, Nowlin states only that Dr. Moore "never met plaintiff" and "did not assess plaintiff's vocational limitations." (Pl.'s Brief 7.) An ALJ is permitted to rely upon the opinion of Dr. Moore, a non-examining, non-treating physician, when that medical source opinion is supported by and consistent with the other evidence in the record. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). As explained above, the ALJ also considered the opinions of Drs. Barry and Wicher, both of which were consistent with Dr. Moore's opinion.

The ALJ set forth specific and legitimate reasons, supported by substantial evidence, for crediting the medical opinions of Drs. Moore, Barry and Wicher, over the opinion of Dr. Neuser.

### B.    *Opinion of Examining Physician*

Nowlin also challenges the ALJ's treatment of Dr. Hwee's medical opinion. Nowlin contends the ALJ purportedly accepted Dr. Hwee's opinion, yet the ALJ disregarded the limitations set out

11 - OPINION AND ORDER

by Dr. Hwee when he designed Nowlin's RFC. (Pl.'s Brief 8.) Nowlin argues that contrary to Dr. Hwee's assessment that Nowlin's "[m]aximum standing and walking capacity is 4-6 hours[,]" the ALJ concluded Nowlin could stand and walk for six hours in a workday. (Tr. 378, 19.) Nowlin acknowledges that the ALJ may disregard all or any portion of Dr. Hwee's assessment, however, the ALJ must provide specific and legitimate reasons for doing so. (Pl.'s Reply 3.)

Dr. Hwee conducted a 35-minute exam of Nowlin in September 2010, and thereafter provided a "Functional Assessment/Medical Sources Statement." (Tr. 373-78.) In addition to his finding of a maximum 4-6 hours walking capacity, Dr. Hwee determined Nowlin had a maximum sitting capacity of up to six hours, did not need an assistive device, had a maximum lifting and carrying capacity of 20 pounds occasionally, and 10 pounds frequently, and could occasionally stoop, kneel, crouch, and crawl. (Tr. 378.)

With certain enumerated exceptions not in dispute, the ALJ determined Nowlin could perform light work in accordance with the definition in 20 C.F.R. § 416.967(b).[6] Light work requires "a good deal of walking or standing." 20 C.F.R. § 416.967(b). A good deal of walking and standing is defined by the Social Security Regulations ("SSR") as walking or standing for a total of approximately six hours in a workday. SSR 83-10, *available* at 1983 WL 31251, at *5-6 (1983)

---

[6] 20 C.F.R. § 416.967(b) defines "light work":

Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").

The RFC is an administrative assessment of the upper limit of work a claimant is able to perform given the limitations imposed by her impairments. 20 C.F.R. §§ 404.1545 and 416.945; *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."). Nowlin does not point to any evidence in the record to show she is precluded from light work. Further, standing "for a total of approximately 6 hours of an 8-hour workday"does not exceed Dr. Hwee's assessment that Nowlin can stand or walk 4-6 hours. Accordingly, in formulating Nowlin's RFC, the ALJ did not disregard Dr. Hwee's limitations.

Moreover, even assuming that in formulating Nowlin's RFC, the ALJ was required to limit Nowlin to only four hours of standing and walking each day, there is substantial evidence in the record to support the ALJ's finding of not disabled. Specifically, at the hearing, Nowlin's counsel posed a hypothetical to the VE that restricted Nowlin to standing only two hours a day. (Tr. 64.) The VE testified that while such a limitation would reduce the number of assembly jobs, there would still be a significant number of appropriate jobs in the local and national economy. (Tr. 65.) This evidence is uncontroverted and not challenged here by Nowlin.

The record before the Court provides substantial evidence for the ALJ's decision finding Nowlin is not disabled as defined by the Act.

13 - OPINION AND ORDER

## IV. CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this 25ᵗʰ day of June 2015.

STACIE F. BECKERMAN
United States Magistrate Judge

14 - OPINION AND ORDER